# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CAESARS ENTERTAINMENT | : **SECURITIES EXCHANGE ACT OF** |
| CORPORATION, JAMES HUNT, | : **1934** |
| ANTHONY RODIO, THOMAS | : |
| BENNINGER, JULIANA L. CHUGG, | : **JURY TRIAL DEMANDED** |
| DENISE CLARK, KEITH COZZA, JOHN | : |
| DIONNE, DON KORNSTEIN, COURTNEY | : |
| MATHER, JAMES L. NELSON, and | : |
| RICHARD SCHIFTER, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Caesars Entertainment Corporation ("Caesars or the "Company") and the members of Caesars' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Caesars and Eldorado Resorts, Inc. ("Eldorado").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on September 3, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Eldorado and Caesars will merge, resulting with Eldorado surviving the merger (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Caesars common share issued and outstanding will be converted into the right to receive $8.40 per share in cash and 0.0899 shares of Eldorado common stock for each Caesars share of common stock (the "Merger Consideration"). Eldorado and Caesars shareholders will hold approximately 51% and 49% of the combined company's outstanding shares, respectively.

3. As discussed below, Defendants have asked Caesars' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisor of Eldorado, J.P. Morgan Securities LLC ("J.P. Morgan"), and the financial advisor of the Company, PJT Partners LP ("PJT"), in conducting their valuation analyses. The Registration Statement also omits material information with respect to the analyses performed to reach the fairness opinions from each financial advisor and information with respect to the sales process.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Caesars' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Caesars common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant James Hunt has served as a member of the Board since October 2017 and is currently the Chairman of the Board.

11. Individual Defendant Anthony Rodio has served as a member of the Board since May 2019 and is currently the Company's Chief Executive Officer.

12. Individual Defendant Thomas Benninger has served as a member of the Board since October 2017.

13. Individual Defendant Juliana L. Chugg has served as a member of the Board since December 2018.

14. Individual Defendant Denise Clark has served as a member of the Board since October 2018.

15. Individual Defendant Keith Cozza has served as a member of the Board since March 2019.

16. Individual Defendant John Dionne has served as a member of the Board since October 2017.

17. Individual Defendant Don Kornstein has served as a member of the Board since October 2017.

18. Individual Defendant Courtney Mather has served as a member of the Board since March 2019.

19. Individual Defendant James L. Nelson has served as a member of the Board since March 2019.

20. Individual Defendant Richard Schifter has served as a member of the Board since May 2017.

21. Defendant Caesars is incorporated in Delaware and maintains its principal offices at One Caesars Palace Drive Las Vegas, NV 89109. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "CZR."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

24. Caesars, through its subsidiaries, provides casino-entertainment and hospitality services in the United States and internationally. The Company operates 39,000 slot machines and 2,700 table games, as well as other games comprising keno, poker, and race and sports books; and approximately 180 buffets, restaurants, bars, nightclubs, and lounges located throughout its casinos, as well as banquets and room service. As of December 31, 2018, it had 50 casinos, including 37 casinos in the United States and 13 casinos internationally with approximately 3 million square feet of gaming space and 40,000 hotel rooms. The Company also provides various retail and entertainment offerings in its casinos; and operates various entertainment venues, including the Colosseum at Caesars Palace and Zappos Theater at Planet Hollywood, as well as The LINQ promenade, an open-air dining, entertainment, and retail development. In addition, it operates an online gaming business that provides real money games; and owns the World Series of Poker tournaments and brand. The Company was formerly known as Harrah's Entertainment Inc. and changed its name to Caesars Entertainment Corporation in November 2010. Caesars was founded in 1937 and is based in Las Vegas, Nevada.

25. On June 24, 2019, the Company and Eldorado jointly announced the Proposed Transaction:

> RENO and LAS VEGAS, Nev. June 24, 2019 – Eldorado Resorts, Inc. (NASDAQ: ERI) ("Eldorado," "ERI," or "the Company") and Caesars Entertainment Corporation (NASDAQ: CZR) ("Caesars")

announced that they have entered into a definitive merger agreement to create the largest U.S. gaming company. The proposed transaction will combine two leading gaming companies with complementary national operating platforms, strong brands, strategic industry alliances, and a collective commitment to enhancing guest service and shareholder value. The combined company will provide its guests with access to approximately 60 domestic casino–resorts and gaming facilities across 16 states. The transaction is transformational for each company's shareholders, employees and customers, combining Eldorado's operational expertise with Caesars industry-leading loyalty program, regional network and Las Vegas assets.

**Summary of Caesars Transaction**
Eldorado will acquire all of the outstanding shares of Caesars for a total value of $12.75 per share, consisting of $8.40 per share in cash consideration and 0.0899 shares of Eldorado common stock for each Caesars share of common stock based on Eldorado's 30- calendar day volume weighted average price per share as of May 23, 2019, reflecting total consideration of approximately $17.3 billion, comprised of $7.2 billion in cash, approximately 77 million Eldorado common shares and the assumption of Caesars outstanding net debt (excluding face value of the existing convertible note). Caesars shareholders will be offered a consideration election mechanism that is subject to proration pursuant to the definitive merger agreement. Giving effect to the transaction, Eldorado and Caesars shareholders will hold approximately 51% and 49% of the combined company's outstanding shares, respectively. Upon completion of the transaction the combined company will retain the Caesars name to capitalize on the value of the iconic global brand and its legacy of leadership in the global gaming industry. The new company will continue to trade on the Nasdaq Global Select Market.

* * *

**Governance and Timing**
- The combined company's Board of Directors will consist of 11 members, six of whom will come from Eldorado's Board of Directors and five of whom will come from Caesars Board of Directors
- The transactions have been unanimously approved by the Boards of Directors of Eldorado, Caesars and VICI. The Caesars transaction is subject to approval of the stockholders of Eldorado and Caesars, the approval of applicable gaming authorities, the expiration of the applicable Hart-Scott-Rodino waiting period and other customary closing

conditions, and is expected to be consummated in the first half of 2020

\* \* \*

26.     The Board has unanimously agreed to Proposed Transaction. It is therefore imperative that Caesars' stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

27.     On September 3, 2019, Caesars and Eldorado jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

29.     For the *Summary of Certain Financial Projections Prepared by ERI*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDAR and (2) EBITDA, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP

7

metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 165. Information about Eldorado's prospective financial information is material since Caesars stockholders will own 49% of the combined company.

30. For the *ERI Projections Regarding Caesars*, the Registration Statement provides values for non-GAAP financial metrics such as (1) EBITDAR and (2) EBITDA, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 165.

31. For *Projections Regarding Unlevered Free Cash Flow of ERI and Caesars*, the Registration Statement fails to provide (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 166.

32. For the *Management's Base Case, Management's Recession Case, and Management's Alternative Case* ("Caesar's Projections"), the Registration Statement provides values for non-GAAP financial metrics such as (1) EBITDAR, (2) EBITDA, and (3) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 167.

33. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP

measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

34. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, 'free cash flow' should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

35. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

36. With respect to PJT's *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose: (i) PJT's objective selection criteria in choosing the selected transactions to analyze; and (ii) the observed transaction-by-transaction enterprise values, pricing multiples, and financial metrics for each selected transaction. Registration Statement at 161.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

37. With respect to PJT's *Discounted Equity Value Analysis*, the Registration Statement fails to disclose: (i) expense of stock based compensation to calculate the terminal value of Caesars common stock; (ii) the basis of choosing a range of terminal value to estimated EBITDA (post-SBC) multiples selected by PJT of 8.25x to 9.25x; (iii) the estimated net debt and minority interests; (iv) the present value of Caesars' equity ownership in the Baltimore joint venture; (v) the number of fully diluted number of shares of Caesars common stock as of December 31, 2022; and (vi) inputs and assumptions underlying the discount rate of 13.50%. Registration Statement at 162.

38. With respect to PJT's *Discounted Cash Flow Analysis* for Caesars, the Registration Statement fails to disclose: (i) ranges of terminal values of Caesars as of December 31, 2023 and the inputs and assumptions underlying the use of the exit multiple range of 8.25x to 9.25x; (ii) the inputs and assumptions underlying the discount rates ranging from 8.75% to 9.25%; (iii) the estimated net debt and minority interests; and (iv) and number of outstanding diluted shares as of December 31, 2019.  Registration Statement at 163.

39. With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Registration Statement omits the financial metrics for each of the selected companies, or even summary statistics as to those same financial metrics. Instead, the Registration Statement discloses only the reference range selected by J.P. Morgan, without reference to any of the actual multiples found in its analysis. Registration Statement at 146.

40. With respect to J.P. Morgan's *Selected Transaction Analysis*, J.P. Morgan examined selected transactions with respect to seven selected companies engaged in businesses analogous to Caesars. However, the Registration Statement fails to disclose the multiples of each of the selected transactions. Registration Statement at 147.

41. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) ranges of terminal values of Eldorado and Caesars at the end of the five-year period ending in 2023; (ii) the basis for applying a perpetual growth rate ranging from 1.0% to 2.0% to the unlevered free cash flow of Eldorado and Caesars during the final year of the five-year period; and (iii) the inputs and assumptions underlying the discount rates ranging from 7.75% to 8.75%. Registration Statement at 147-48.

42. With respect to the *Background of the Merger*, the Registration Statement fails to disclose whether the confidentiality agreements entered into between Caesars and Eldorado, and between Caesars and other potential bidders, contained "don't-ask-don't-waive" provisions in the customary standstill provisions.

43. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

48. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

49.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Caesars within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Caesars, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Caesars, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Caesars, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 5, 2019

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*